UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

                              NO. CIV. S-01-2127 LKK/GGH

        Plaintiff,

   v.                                O R D E R

REAL PROPERTY LOCATED 18025
N. QUARTZ MOUNTAIN ROAD, AMADOR
COUNTY, FIDDLETOWN, CALIFORNIA,
APN: 015-320-019-000, INCLUDING
ALL APPURTENANCES AND IMPROVEMENTS
THERETO,

        Defendant.
_____/

WILLIAM LOCKYER and WILLIAM OLSON,

        Claimants.
_____/

    Pending before the court are claimants William Lockyer and William Olsen's ("claimants") motion to set aside a final judgment of forfeiture pursuant to Fed. R. Civ. P. 60(b). The court granted the government time to conduct depositions of claimants and the government has now presented the court with an amended opposition

1

to claimants' motion.  For the reasons set forth below, the court grants claimants' motion.

**I.**

**BACKGROUND FACTS[1]**

On October 2, 2001, a state search warrant was executed at 18025 N. Quartz Mountain Road, Amador County, Fiddletown, California, by law enforcement officers from the Amador County Sheriff's Department.  Both William Olsen and William Lockyer lived at this address.  After being told that he was not under arrest and that a search warrant was being executed on his property, Lockyer told the officers that he grew marijuana for medical purposes and had certificates that permitted him to grow marijuana under California law.  Lockyer estimated that he had a little less than 300 plants on the property and had prescriptions that covered all the plants.

Law enforcement officers searched the 33-acre property. According to the government's complaint, the officers found 573 adult female marijuana plants.  The complaint also states that officers discovered additional evidence of growing operations and other paraphernalia used to cultivate marijuana.  A .38 caliber firearm was also discovered in the residence.

On November 20, 2001, the government commenced forfeiture proceedings against the real property pursuant to 21 U.S.C. § 881(a)(7), alleging that the property was used to facilitate

---

[1] Adopted from the parties' papers.

2

violations of 21 U.S.C. § 841 (a).  Claimants retained William Panzer as their attorney.  Claimants filed an answer contesting the forfeiture, as did a lienholder, First Nationwide Mortgage Corporation.

Both parties agree that Panzer's conduct during the original forfeiture proceedings constituted gross negligence.  Among other things, Panzer misled his clients, failed to respond to discovery requests, consistently missed court appearances and court imposed deadlines and did not file oppositions to government briefs.

After multiple warnings by the court, the magistrate judge entered an order imposing monetary sanctions upon Panzer and recommending that the claims of Lockyer and Olson be stricken.  On July 28, 2004, Judge David F. Levi entered an order adopting the findings and recommendations of the magistrate judge.

On September 17, 2004, the government and First Nationwide entered into a stipulation providing for a final judgment of forfeiture.  On September 30, 2004, a final judgment of forfeiture was ordered by this court.  The judgment forfeited all rights, title and interest in claimants' real property to the United States.[2]

Claimants obtained a new attorney, Kevin Hyatt, who, on their behalf, filed a very brief motion for relief from the judgment. Subsequently, the claimants obtained new counsel, William S.

---

[2] Also forfeited was $28,467.63 from local bank accounts and $102,000 from a Hawaii bank account, as well as a small apartment in Hawaii that claimants had purchased for $70,000.

3

Farmer, the current counsel of record. The government and the claimants (now represented by Mr. Farmer) stipulated that the Hyatt motion be withdrawn and that new dates be set.

On April 8, 2005, claimants filed a motion to set aside final judgment of forfeiture and petition to determine excessive fine. On September 1, 2005, the court stayed the motion for sixty days to allow the government to conduct discovery. During this time, the government took depositions of both claimants and William Panzer and subsequently filed an amended opposition.

## II.

## STANDARDS

**A. STANDARD TO SET ASIDE JUDGMENT UNDER FED. R. CIV. P. 60 (b)**

Federal Rule of Civil Procedure 60 (b) (6) provides that: "On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment . . . for . . . . any reason justifying relief from the operation of the judgment. . . ." An attorney's gross negligence may constitute "extraordinary circumstances" under Rule 60 (b)(6). Community Dental Serv. v. Tani, 282 F.3d 1164, 1170 (9th Cir. 2002).

Rule 60 (b) is "remedial in nature and . . . must be liberally applied." Falk v. Allen, 739 F.2d 461, 463 (9th Cir. 1984). There is a strong preference for deciding a case on the merits. Id. The Ninth Circuit has clearly stated that:

> where there has been no merits decision, appropriate exercise of district court discretion under Rule 60(b) requires that the finality interest should give way fairly readily, to further the competing interest in reaching the merits of a dispute.

4

TCI Group Life Ins. Plan v. Knoebber, 244 F.3d 691, 696 (9th Cir. 2001).

There are three factors for the court to consider in considering a motion to reopen a default judgement under Rule 60(b): (1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense, and (3) whether culpable conduct of the defendant led to the default judgement. Falk, 739 F.2d at 463; Accord Franchise Holding II, LLC. v. Huntington Restaurants Group, Inc., 375 F.3d 922, 926 (9th Cir. 2004). A district court is free to deny the motion if any of the three factors are true. Franchise Holding II, LLC., 375 F.3d at 926.

In the case at bar, the government concedes factors one and three. The only factor at issue in the pending matter is whether claimants have a meritorious defense so that vacating the judgment would not be an empty exercise.

**B.   STANDARD IN EVALUATING EXCESSIVE FINES**

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: the amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish. United States v. Bajakajian, 524 U.S. 321 (1998).

As articulated in Bakakajian, the overarching principle of the proportionality inquiry is that the culpability of the offender

5

1  should be examined specifically, rather than examining the gravity
2  of the crime in the abstract. Id. at 2038-39.  The Court applied
3  several factors to determine whether the forfeiture was grossly
4  disproportionate: (1) whether the violation was related to any
5  other illegal activities; (2) consideration of the other penalties
6  that the Legislature has authorized, as well as the maximum
7  penalties that could have been imposed under the Sentencing
8  Guidelines; (3) the extent of the harm caused; and (4) if the
9  forfeiture amount is grossly disproportionate to the gravity of the
10 offense.
11      In 2000, the Civil Asset Forfeiture Reform Act ("CAFRA")
12 codified the Bajakajian decision.  Specifically, under 18 U.S.C.
13 § 983(g), a claimant may petition the court "to determine whether
14 the forfeiture was constitutionally excessive."  18 U.S.C.
15 § 983(g).  The claimant has the burden of establishing that the
16 "forfeiture is grossly disproportional by a preponderance of the
17 evidence at a hearing conducted by the court without a jury." Id.
18 In making its determination, the court compares the "forfeiture to
19 the gravity of the offense giving rise to the forfeiture." Id.  If
20 the court finds that there was an Eighth Amendment violation, the
21 remedy is to reduce or eliminate the forfeiture to avoid the
22 violation.  See United States v. 6380 Little Canyon Road, 59 F.3d
23 974 (9th Cir. 1995)(the court must limit a civil forfeiture to an
24 appropriate portion of the asset to avoid an Eighth Amendment
25 violation).
26 ////

6

## III.

## ANALYSIS

Although the government now concedes that Panzer's conduct constituted "gross negligence," the government argues that vacating the judgment pursuant to Rule 60(b) would be an "empty exercise." Pl's. Opp'n at 14. Specifically, the government asserts that claimants' excessive fines defense lacks merit. Claimants, however, present evidence that their excessive fines defense does have merit, therefore justifying relief under 60(b). For the reasons set forth below, the court grants claimants' motion to set aside the forfeiture judgment.

**A. ESTABLISHING THE EXISTENCE OF A MERITORIOUS DEFENSE UNDER RULE 60(b)**

A party seeking relief under 60(b) must convince the court "that vacating the judgement will not be an empty exercise." Local 59 v. Superline Transp. Co., 953 F.2d 17, 20 (1st Cir. 1992). Should claimants present no showing of a meritorious defense, then nothing but pointless delay can result from reopening the judgment. See Hawaii Carpenters' Trust Funds v. Stone, 794 F.2d 508, 513 (9th Cir. 1986). Moreover, "[a] defendant seeking to vacate a default judgment must present specific facts that would constitute a defense." TCI Group Life Ins. Plan v. Knoebber, 244 F.3d 691, 700 (9th Cir. 2001). See also Madsen v. Bumb, 419 F.2d 4, 6 (9th Cir. 1969)(holding that district court had not erred in declining to vacate default judgment when defendant offered "mere general denial without facts to support it").

7

1   That said, the burden on claimants is not extraordinarily
2  burdensome.  <u>TCI Group Life</u>, 244 F.3d at 700.  "While a movant
3  . . . need not establish that it possesses an ironclad claim or
4  defense which will guarantee success at trial, it must establish
5  a potentially meritorious claim or defense which, if proven, will
6  bring success."   <u>Local 59</u>, 953 F.2d at 21; <u>see also</u> <u>Davis v.</u>
7  <u>Musler</u>, 713 F.2d 907, 916 (2nd Cir. 1983) ("a defendant seeking to
8  vacate a default judgement need not conclusively establish the
9  validity of the defense[s] asserted.")
10   The "frequently quoted standard is that the moving party must
11 make allegations that, if established at trial, would constitute
12 a valid claim or defense."  12 James Wm. Moore, et al., <u>Moore's</u>
13 <u>Federal Practice</u> § 60.24[2].  Similarly, it is well-established
14 that allegations are meritorious "if they contain 'even a hint of
15 a suggestion' which, if proven at trial would constitute a [valid
16 claim or a] complete defense." <u>Id</u>. (citing <u>Keegel v. Key West &</u>
17 <u>Caribbean Trading Co., Inc.</u>, 627 F.2d 372 (D.C. Cir. 1980)); <u>see</u>
18 <u>also</u> <u>Securities & Exchange Comm'n v. McNulty</u>, 137 F.3d 732, 740
19 (2nd Cir. 1998) (the standard is not likelihood of success, rather,
20 claimant need only show that the defense allegations, if proven,
21 would constitutes a complete defense); <u>Tri-Continental Leasing</u>
22 <u>Corp., Inc. v. Zimmerman</u>, 485 F.Supp. 495, 497 (D.C. Cal. 1980)
23 ("Because the preferred disposition of any case is upon the merits,
24 the showing of a meritorious defense does not involve a heavy
25 burden of proof.  Thus, a party seeking to set aside a default need
26 not prove his defense by a preponderance of the evidence.")

8

1   In the case at bar, the court must examine claimants'
2 excessive fines claim to determine if it is potentially
3 meritorious.

**B.   EXCESSIVE FINES CLAIM**

When examining proportionality, the court is not required to consider "any rigid set of factors." United States v. Mackby, 339 F.3d 1013, 1017 (9th Cir. 2003). Nevertheless, the Ninth Circuit often looks to "factors similar to those used by the Court in Bajakajian." Id. In Bajakajian, the Supreme Court considered four factors in weighing the gravity of the defendant's offense: (1) the nature and extent of the crime, (2) whether the violation was related to other illegal activities, (3) the other penalties that may be imposed for the violation, and (4) the extent of the harm caused. See Bajakajian, 524 U.S. at 337-40.

In the case at bar, the court makes no findings on the actual merits of the excessive fines clause, but does conclude that claimants present specific facts that could constitute a defense to forfeiture under the excessive fines clause. While claimants' excessive fines defense may or may not be "ironclad," it establishes "a potentially meritorious claim or defense which, if proven, will bring success." Local 59, 953 F.2d at 21.

**1.   <u>The nature and extent of the crime compared to the amount of the forfeiture</u>**

Claimants set forth sufficient facts that, if true, would support finding that this factor – the nature and extent of the crime – weighs in favor of finding the forfeiture excessive.

1 The government maintains that claimants were directly involved
2 in cultivating marijuana and that the defendant real property "was
3 more than incidentally involved in the illegal conduct." Pl.'s
4 Amended Opp'n at 12:18-19. The government argues that the most
5 recent depositions of claimants show that the growing activity was
6 "sophisticated, involved a large number of marihuana plants,
7 involved the use of multiple facilities on the property, [and] was
8 sustained over many years . . . ." Id. at 32:19-22.

9 Claimants, however, allege that the marijuana was grown solely
10 to provide comfort and relief to AIDS patients, Cls.' Mot. to Set
11 Aside at 12:10, and it was never sold on "the street." Claimants
12 allege that they had obtained licenses under California law to grow
13 a limited number of plants for medical distribution and use. Cls.'
14 Mot. to Set Aside at 13:22. The marijuana was never exchanged for
15 income or profit and money they did receive went to reimbursement
16 for incurred expenses of growing. Cls.' Reply at 6:13. Claimants
17 also maintain that there is undisputed evidence that this amount
18 did not exceed $25,000.00. Id.

19 Claimants also dispute the way the government weighed the
20 marijuana plants, specifically, that the marijuana was weighed in
21 wet, not dry, conditions. See Cls.' Reply at 13. Claimants
22 similarly maintain that only "by counting unusable plants that
23 would never reach maturity or harvest can the government offer
24 numbers in excess of what [claimants] believed were lawful under
25 California law." Cls.' Mot. to Set Aside at 13:19-21. Finally,
26 claimants remind the court that they were never prosecuted for a

10

1  criminal offense.  Cls.' Mot. to Set Aside at 12:19.
2      Claimants also argue that the amount of property seized is not
3  proportional to the alleged illegal activity that occurred on the
4  defendant property.  Claimants assert that only a small fraction
5  of their land was used for cultivation, and yet all thirty three
6  acres were forfeited.  Claimants further dispute the value of the
7  property.  Claimants assert that the land should be valued at a
8  much higher sum than that estimated by the government.  The value
9  of the land should reflect the fact that the land produced an
10 income of some $35,000.00 and contained very valuable orchards,
11 established berry bushes and other fruit trees.  On a more personal
12 level, claimants argue that they have "lost, entirely, the place
13 that has been their home for many years."  Cls.' Mot. to Set Aside
14 at 14:4.  Claimants spent a great deal of time cultivating the land
15 and growing numerous fruits and vegetables, much of which they sold
16 for profit.  Id.
17     Not only was their land forfeited, but also some $132,000.00
18 worth of saving were forfeited, and at least $100,000.00 of this
19 money had nothing to do with the marijuana cultivation.  See Cls.'
20 Reply at 12.
21     These assertions contain a "hint of a suggestion" which, if
22 proven, would constitute a valid defense that the forfeiture of the
23 land and the financial assets was excessive.  12 James Wm. Moore,
24 et al., Moore's Federal Practice § 60.24[2] (citing Keegel v. Key
25 West & Caribbean Trading Co., Inc., 627 F.2d 372 (D.C. Cir. 1980)).
26 ////

11

### 2. Whether the violation was related to other illegal activities

Claimants maintain that the gun found by law enforcement was unrelated to the marijuana cultivation. Claimants assert that the government's photograph of a gun in a drawer was "staged" and that claimants only used the gun on a couple of occasions to shoot gophers in the garden. Cls.' Reply at 13:19-14:4.

Again, if this assertion is established at a hearing, claimants would be able to use this factor to their advantage in arguing that the cultivation of marijuana was not connected to any other illegal activity and therefor, the forfeiture is excessive.

### 3. The other penalties that may be imposed for the violation

The court also considers the potential maximum penalties under federal criminal statues. <u>Bajakajian</u>, 524 U.S. at 338. Here, the parties dispute how the sentencing guidelines should be computed and applied.

The government maintains that for each count of manufacturing 100 or more marijuana plants, there is a mandatory minimum five-year term of imprisonment and a maximum fine of $2 million for each offender. Pl.'s Amended Opp'n at 19. The government also asserts that under the Sentencing Guidelines, the recommended base offense level would be 22 for claimant Lockyer and 24 for claimant Olsen. Pl.'s Amended Opp'n at 25:6. This level would be enhanced because of the loaded handgun found on the property.

////

1  Claimants, however, argue that this case clearly justifies a
2 downward departure based on "safe harbor" as the gun found on the
3 property had no connection whatsoever with the cultivation of
4 marijuana. Similarly, claimants' cooperation with the government,
5 as well as claimant Lockyer's health conditions, would qualify for
6 a downward departures. Claimants suggest that upon "a full
7 hearing, these facts would be made clear to the Court." Cls.'
8 Reply at 11:28-12:1.

9  The court does not rule on the validity of these claims, but
10 recognizes that these claims have potential merit, которое is all
11 that is required under the Rule 60(b) "meritorious defense"
12 analysis.

### 4.  The extent of the harm caused to the community

14  The government maintains that claimants "purported medical
15 marijuana justification for violating a federal state does not
16 alleviate the harm." Pl.'s Opp'n at 31. Moreover, claimants admit
17 that some of the marijuana contained mold and, according to the
18 government, mold "residue in marihuana smoke could be deadly to the
19 intended receipt of their marihuana, an AIDS patient." Id. at
20 32:4.

21  Claimants vigorously dispute the extent of the harm caused.
22 Claimants maintain that the evidence shows that they went to "great
23 lengths to eliminate and destroy marijuana that was unsuitable for
24 medical patients. In fact, some 80-90% of plants grown were
25 discarded for this reason." Cls.' Reply at 9:27-10:1. Claimants
26 also assert that claimant Lockyer testified in his deposition as

13

1  to the "efforts and concerns they had about making sure that none
2  of the marijuana they had grown reached the wrong people, that is,
3  anyone other than a patient with a doctor's prescription." Id. at
4  10:9-11.
5      Finally, claimants allege that the "community where the effect
6  of the drug production is to be measured is a community contained
7  solely within California, and this community has explicitly
8  recognized and decreed the positive benefit and value of medical
9  marijuana grown and distributed to patients holding a doctors'
10 prescription." Id. at 10:14-17.
11     Again, the court is convinced that claimants assert
12 sufficiently specific allegations that, if proven, would constitute
13 a claim of excessive fines.

**C.   CONCLUSION**

15     This case has never been decided on the merits. Claimants now
16 seek their day in court. Under Rule 60(b) jurisprudence, there is
17 a preference for disposing of a case on its merits and for this
18 reason, the showing of a meritorious defense does not require a
19 heavy burden of proof. See Tri-Continential, 485 F.Supp. at 497.
20     Here, claimants allegations are specific and, if proven,
21 constitute a potentially meritorious claim that the forfeiture of
22 their land and their financial assets violated the excessive fines
23 clause of the Eighth Amendment.
24     Accordingly, the court hereby ORDERS that:
25     1.   The final judgment of forfeiture is hereby SET ASIDE
26 pursuant to Rule 60(b).

1    2.  The Clerk is directed to REOPEN the case.

2    3.  The court hereby SETS the following scheduling deadlines:

3    Designation of experts:        March 2, 2006

4    Discovery cut-off:             April 30, 2006

5    Pretrial:                      June 26, 2006 at 2:00 p.m.

6    Court trial:                   September 19, 2006 at 10:30 a.m.

7    4.  At the request of the parties, a Settlement Conference is
8 now SET before the Honorable Peter A. Nowinski on March 27, 2006
9 at 9:00 a.m. Counsel are directed to submit settlement conference
10 statements to the settlement judge not later than seven (7) days
11 prior to the conference.  At counsel's option, such statements may
12 be submitted in confidence pursuant to Local Rule 16-270(d).

13    IT IS SO ORDERED.

14    DATED:  February 1, 2006.

15                                  /s/Lawrence K. Karlton
                                    LAWRENCE K. KARLTON
16                                  SENIOR JUDGE
                                    UNITED STATES DISTRICT COURT

15